Evan J. Smith
BRODSKY & SMITH
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:     516.741.4977
Facsimile:     516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CARLOES CRUMPTON, | Case No.: |
| Plaintiff, | **Complaint For:** |
| vs. | (1) Violation of § 14 (a) of the Securities Exchange Act of 1934 |
| FIRST HORIZON CORPORATION, HARRY V. BARTON JR., KENNETH A. BURDICK, DARYL G. BYRD, JOHN N. CASBON, JOHN C. COMPTON, WENDY P. DAVIDSON, WILLIAM H. FENSTERMAKER, D. BRYAN JORDAN, J. MICHAEL KEMP, SR., RICK E. MAPLES, VICKI R. PALMER, COLIN V. REED, E. STEWART SHEA III, CECELIA D. STEWART, RAJESH SUBRAMANIAM, ROSA SUGRAÑES, and R. EUGENE TAYLOR, | (2) Violation of § 20(a) of the Securities Exchange Act of 1934 **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff, Carloes Crumpton ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

## SUMMARY OF THE ACTION

1.     Plaintiff brings this stockholder action against First Horizon Corporation ("First Horizon" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants," and collectively with the Company, the "Defendants"), for violations of

Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to sell the Company to The Toronto-Dominion Bank and TD Bank US Holding Company through merger vehicle Falcon Holdings Acquisition Co. ("Merger Sub" and collectively with Parent, "TD") as a result of an unfair process, and to enjoin an upcoming stockholder vote on a proposed all cash transaction (the "Proposed Transaction").

2.      The terms of the Proposed Transaction were memorialized in a February 27, 2022, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, each existing share of First Horizon's common stock will be converted into the right to receive $25.00 in cash, without interest. Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff. This action seeks to enjoin the Proposed Transaction.

3.      Thereafter, on April 12, 2022, First Horizon filed a Preliminary Proxy Statement on Form PREM14A attaching the proxy statement (the "Preliminary Proxy Statement") with the SEC in support of the Proposed Transaction.

4.      The Proposed Transaction is unfair for a number of reasons.  Significantly, it appears as though the Board has entered into the Proposed Transaction to procure for itself and senior management of the Company significant and immediate benefits with no thought to Plaintiff, as well as the Company's public stockholders.  For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

5.      In violation of the Exchange Act, Defendants caused to be filed the materially deficient Preliminary Proxy Statement on April 12, 2022 with the SEC in an effort to Plaintiff, to vote in favor of the Proposed Transaction.  The Preliminary Proxy Statement is materially

deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to vote in favor of the Proposed Transaction, and is thus in violation of the Exchange Act.   As detailed below, the Preliminary Proxy Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for First Horizon, provided by First Horizon management to the Board and the Board's financial advisor Morgan Stanley & Co. LLC ("Morgan Stanley") and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions created by Morgan Stanley, if any, and provide to the Company and the Board.

6.     Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff.  This action seeks to enjoin the Proposed Transaction.

## PARTIES

7.     Plaintiff is a citizen of Michigan and, at all times relevant hereto, has been a First Horizon stockholder.

8.     Defendant First Horizon First Horizon Corporation operates as the bank holding company for First Horizon Bank that provides various financial services. First Horizon is incorporated in Tennessee and has its principal place of business at 165 Madison Avenue, Memphis, Tennessee.  Shares of First Horizon common stock are traded on the New York Stock Exchange under the symbol "FHN."

9.     Defendant Harry V. Barton Jr. ("Barton") has been a Director of the Company at all relevant times.

10.     Defendant Kenneth A. Burdick ("Burdick") has been a director of the Company at all relevant times.

11.     Defendant Daryl G. Byrd ("Byrd") has been a director of the Company at all relevant times.

12.     Defendant John N. Casbon ("Casbon") has been a director of the Company at all relevant times.

13.     Defendant John C. Compton ("Compton") has been a director of the Company at all relevant times.

14.     Defendant Wendy P. Davidson ("Davidson") has been a director of the Company at all relevant times.

15.     Defendant William H. Fenstermaker ("Fenstermaker") has been a director of the Company at all relevant times.

16.     Defendant D. Bryan Jordan ("Jordan") has been a director of the Company at all relevant times.  In addition, Jordan serves as the Company's Chief Executive Officer ("CEO").

17.     Defendant J. Michael Kemp, Sr. ("Kemp") has been a director of the Company at all relevant times.

18.     Defendant Rick E. Maples ("Maples") has been a director of the Company at all relevant times.

19.     Defendant Vicki R. Palmer ("Palmer") has been a director of the Company at all relevant times.

20.     Defendant Colin V. Reed ("Reed") has been a director of the Company at all relevant times.

21.     Defendant E. Stewart Shea III ("Shea") has been a director of the Company at all relevant times.

22.     Defendant Cecelia D. Stewart ("Stewart") has been a director of the Company at all relevant times.

23.     Defendant Rajesh Subramaniam ("Subramaniam") has been a director of the Company at all relevant times.

24.     Defendant Rosa Sugrañes ("Sugrañes") has been a director of the Company at all relevant times.

25.     Defendant R. Eugene Taylor ("Taylor") has been a director of the Company at all relevant times.

26.     Defendants identified in ¶¶ 9 - 25 are collectively referred to as the "Individual Defendants."

27.     Non-Party TD provides various financial products and services in Canada, the United States, and internationally. Shares of TD common stock are traded on the Nasdaq Stock Exchange under the symbol "TD."

28.     Non-Party Merger Sub is a wholly owned subsidiary of TD created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

29.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

30.     Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

31.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company's stock trades on the New York Stock Exchange which is headquartered in this District.

## SUBSTANTIVE ALLEGATIONS

### Company Background

32.     First Horizon Corporation operates as the bank holding company for First Horizon Bank that provides various financial services. The company operates through four segments: Regional Banking, Fixed Income, Corporate, and Non-Strategic. It offers general banking services for consumers, businesses, financial institutions, and governments. The company also underwrites bank-eligible securities and other fixed-income securities eligible for underwriting by financial subsidiaries; sells loans and derivatives; and offers advisory services. In addition, it offers various services, such as mortgage banking; title insurance and loan-closing; brokerage; correspondent banking; nationwide check clearing and remittance processing; trust, fiduciary, and agency; equipment finance; and investment and financial advisory services. Further, the company sells mutual fund and retail insurance products; and credit cards. It operates approximately 490 banking offices in 12 states under the First Horizon Bank brand; and 29 offices in 18 states under the FHN Financial brand in the United States. The Company was formerly known as First Horizon National Corporation and changed its name to First Horizon Corporation in November 2020. First Horizon Corporation was founded in 1864 and is headquartered in Memphis, Tennessee.

33.     The Company's most recent financial performance press release, revealing financial results from the quarter preceding the announcement of the Proposed Transaction, indicated impressive financial success.  For example, in the January 20, 2022 press release announcing its 2022 Q3 financial results, the Company highlighted revenue of $745 million, surpassing the Zacks Consensus Estimate by 1.57%

34.     Speaking on the positive results, CEO Defendant Jordan said, "Our solid results for the quarter and the year reflect the underlying momentum in our balanced business model and attractive geographic footprint," ….. "Our continued focus on execution drove improved net interest income, further merger savings and revenue synergies and improved asset quality that more than offset the impact of expected fee income headwinds. We also increased our return of capital to shareholders through common share repurchases."

35.     The sustained financial success and impressive results are not an anomaly, but rather, are indicative of a trend of continued future potential success by First Horizon. Clearly, based upon the positive outlook, the Company is likely to have tremendous future success.

36.     Despite this upward trajectory, the Individual Defendants have caused First Horizon to enter into the Proposed Transaction without providing requisite information to First Horizon stockholders such as Plaintiff.

***The Flawed Sales Process***

37.     As detailed in the Preliminary Proxy Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible.

38.     Notably, the Preliminary Proxy Statement fails to indicate whether a committee of independent and disinterested Board members was created to run the sales process.

39.     Additionally, the Preliminary Proxy Statement indicates that no market check for potentially interested third parties was conducted by the Board or anyone on the Board's behalf. Additionally, the Preliminary Proxy Statement fails to give adequate information why such check was not done.

40.     Moreover, the Preliminary Proxy Statement is silent as to the nature of the confidentiality agreement entered into between the Company and TD, whether this agreement differed from any other agreement with potentially interested third parties not specifically mentioned by the Preliminary Proxy Statement, if so in all specific manners, including all specific terms of any such included "don't-ask, don't-waive" provisions or standstill provisions contained therein, including, all specific conditions, if any, under which such provisions would fall away.

41.     It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

***The Proposed Transaction***

42.     On February 28, 2022, First Horizon and TD issued a joint press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> **TORONTO and CHERRY HILL, N.J. and MEMPHIS, Tenn., Feb. 28, 2022** /PRNewswire/ -- TD Bank Group ("TD" or "the Bank") (TSX and NYSE: TD) and First Horizon Corporation ("First Horizon") (NYSE: FHN) today announced that they have signed a definitive agreement for TD to acquire First Horizon in an all-cash transaction valued at US$13.4 billion, or US$25.00 for each common share of First Horizon. Through this financially compelling transaction, TD accelerates its long-term growth strategy in the United States by acquiring a premier regional bank with an aligned culture and risk-management framework.
>
> "First Horizon is a great bank and a terrific strategic fit for TD. It provides TD with immediate presence and scale in highly attractive adjacent markets in the U.S. with significant opportunity for future growth across the Southeast," said Bharat Masrani, Group President and Chief Executive Officer, TD. "Working with the First Horizon team, TD will build upon the success of its strong franchise and deliver the legendary customer experiences that differentiate us in every market across our footprint."
>
> Following the closing of the transaction, Bryan Jordan, President and Chief Executive Officer of First Horizon, will join TD as Vice Chair, TD Bank Group, reporting to Bharat Masrani and will join the TD Senior Executive Team. He will also be named to the Boards of Directors of TD's U.S. banking entities as a director and Chair. Jordan will continue to be based in Memphis.
>
> "We have built a very strong business at First Horizon, and by joining forces with TD, we will create extraordinary value for our key stakeholders with a shared customer-centric strategy, enhanced scale and a broader product set for our clients. This is a true growth story," said Jordan. "We have long respected TD as a leader in U.S. banking and are confident that its continued and growing investments in our local markets will extend our long history of community support. Thank you to our First Horizon associates for their efforts and dedication to our clients and communities as we continue to deliver for them every day. We look forward to successfully completing this transaction and are excited to join TD."
>
> "I am very pleased that Bryan and talented leaders from across First Horizon will join TD. Their deep customer and community relationships and proven success driving growth will be of tremendous value as we integrate our teams and deliver for the millions we serve," added Masrani.

Leo Salom, Group Head, U.S. Retail, TD Bank Group, and President and CEO, TD Bank, America's Most Convenient Bank®, will lead the combined businesses.

"I am excited to welcome First Horizon's associates, leaders and valued customers to TD once the transaction closes. As one team, with complementary businesses, distribution channels and a shared culture of best-in-class customer service, we will chart the next phase of growth together," said Salom. "The Southeastern U.S. represents a tremendous opportunity for TD and the addition of First Horizon's commercial and specialty banking capabilities will position us as a leading national player in commercial banking. We will combine our resources and capabilities and continue to invest in the region as we focus on delivering the most differentiated banking experience in our markets."

**A Top 6 U.S. Bank**

On a pro forma basis excluding merger adjustments, TD's U.S. franchise1 will be a top 6 U.S. bank, with approximately US$614 billion in assets and a network of 1,560 stores, serving over 10.7 million U.S. customers across 22 states; globally, TD Bank Group will have approximately C$1,841 billion in assets, with over 2,600 branches serving the needs of more than 27.5 million customers2.

First Horizon is headquartered in Memphis, Tennessee, with assets of US$89 billion as of December 31, 2021. First Horizon operates 412 branches and serves over 1.1 million consumer, business and commercial customers across 12 states. TD will benefit from First Horizon's strong regional presence, including leadership positions in Tennessee and Louisiana, additional density in Florida, the Carolinas and Virginia, and important footholds in the attractive Atlanta, Georgia, and Dallas and Houston, Texas markets.

Collectively, populations in First Horizon's markets are expected to grow approximately 50% faster than the U.S. national average, with some markets far exceeding that level, offering important future growth opportunities as TD invests in the region.

**Transaction Highlights**

The transaction is expected to be immediately accretive at closing to TD's adjusted EPS and over 10% accretive to 2023E adjusted EPS on a fully-synergized basis3. The transaction is expected to result in a fully-synergized return on invested capital of 10% in 20234. The purchase price represents a 9.8 times multiple of First Horizon's 2023E fully-synergized earnings4 and a 2.1 times multiple to First Horizon's estimated tangible book value at close5. TD expects to achieve approximately US$610 million in pre-tax cost synergies equal to 33% of First Horizon's 2023E non-interest expense6 through a combination of technology and systems consolidation, and other operational efficiencies. TD expects to incur total

merger and integration costs of US$1.3 billion primarily in the first two years following close.

The transaction is expected to close in the first quarter of TD's 2023 fiscal year, and is subject to customary closing conditions, including approvals from First Horizon's shareholders and U.S. and Canadian regulatory authorities. If the transaction does not close prior to November 27, 2022, First Horizon shareholders will receive, at closing, an additional US$0.65 per share on an annualized basis for the period from November 27, 2022 through the day immediately prior to the closing. The transaction will terminate, unless otherwise extended, if it does not close by February 27, 2023.

TD expects to use excess capital on its balance sheet for the transaction, reflecting its robust capital and liquidity position. Concurrent with this announcement, TD separately announced that the automatic share purchase plan established for its normal course issuer bid will automatically terminate in accordance with its terms.

At close, TD's Common Equity Tier 1 ratio is expected to be above 11%7.

Based on First Horizon's December 31, 2021 balance sheet, the acquisition would add approximately US$55 billion of loans and US$75 billion of deposits to TD's balance sheet, and TD would expect to take a credit mark at close of US$880 million, or 161 basis points of loans.

In addition, TD has agreed to invest US$494 million in non-voting First Horizon preferred stock (convertible in certain circumstances into up to 4.9% of First Horizon's common stock) to support First Horizon's growth and franchise enhancement, including employee retention programs.

**A Shared Commitment to Local Communities**

Once the transaction is completed, Memphis, First Horizon's current headquarters, will be an important regional hub for TD in the U.S. Southeast, supporting customers and operations and contributing to local communities and economies. TD is also committed to retaining First Horizon's client-facing bankers, with no planned branch closures as a result of the transaction. In addition, upon closing, US$40 million will be contributed to a First Horizon foundation.

TD's purpose, to enrich the lives of our customers, communities and colleagues, is embedded in the Bank's strategy and is reflected in its unique and inclusive culture.

TheTD Ready Commitment brings TD's philanthropy, people and business together to deliver positive impact in local markets.

"First Horizon and TD share a common belief that we can only thrive when the communities in which we live and work thrive. TD is committed to growing our

presence and investments across the states in which First Horizon operates," concluded Masrani.

### *Potential Conflicts of Interest*

43.     The breakdown of the benefits of the deal indicate that First Horizon insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of First Horizon.

44.     Notably, Company insiders, currently own large, illiquid portions of Company stock which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction.   Significantly, while the Preliminary Proxy Statement provides the following it fails to provide an accounting of the cash consideration such amounts will be exchanged for:

| Name and Address of Beneficial Owner(1)(2) | Amount and Nature of Beneficial Ownership | |
| --- | --- | --- |
| | Number | Percentage(3) |
| **Principal Shareholders** | | |
| BlackRock, Inc. | 61,543,301 (4) | 11.40% |
| The Vanguard Group, Inc. | 57,729,147 (5) | 10.68% |
| **Directors, Director Nominees and Executive Officers:** | | |
| Harry V. Barton, Jr. | 143,373 | * |
| Michael J. Brown[10] | 656,815 (7) | * |
| Kenneth A. Burdick | 19,935 | * |
| Daryl G. Byrd | 2,292,458 (7) (8) | * |
| John N. Casbon | 94,626 | * |
| John C. Compton | 94,152 | * |
| Wendy P. Davidson | 16,085 | * |
| Hope Dmuchowski | (7) | * |
| William H. Fenstermaker | 344,827 (8) | * |
| D. Bryan Jordan | 1,247,923 (7) | * |
| J. Michael Kemp, Sr. | 20,719 | * |
| William C. Losch, III[10] | 360,670 (7) | * |
| Rick E. Maples | 58,265 | * |
| Vicki R. Palmer | 79,938 (6) | * |
| David T. Popwell | 440,956 (7) | |
| Colin V. Reed | 127,866 | * |
| Anthony J. Restel | 499,307 (7) | * |
| E. Stewart Shea, III | 403,473 (8) | * |
| Ceclia D. Stewart | 34,622 | * |
| Rajesh Subramaniam | 23,082 | * |
| Rosa Sugrañes | 26,219 | * |

| | | |
|---|---|---|
| R. Eugene Taylor | 585,036 | * |
| All directors and executive officers as a group (25 persons)[10] | 8,306,551  (7) | 1.55% |

45. Additionally, Company insiders, currently own large amounts of Company, options, restricted stock units, and other Company equity awards which will vest and be exchanged for the merger consideration upon the consummation of the Proposed Transaction. Despite this, the Preliminary Proxy Statement fails to give an accounting of such equity holdings or the amount of consideration that they will be exchanged for.

46. In addition, certain employment agreements with certain First Horizon executives, entitle such executives to severance packages should their employment be terminated under certain circumstances. These 'golden parachute' packages are significant, and will grant several directors or officers entitled to them millions of dollars, compensation not shared by Plaintiff and will be paid out as follows:

*Golden Parachute Compensation*

| Name | Cash ($)[1] | Equity ($)[2] | Perquisites / Benefits ($)[3] | Tax Reimbursements ($)[4] | Total ($) |
|---|---|---|---|---|---|
| D. Bryan Jordan | 8,243,375 | 25,249,530 | 118,720 | 7,852,621 | 41,464,246 |
| Hope Dmuchowski | 2,766,434 | 1,815,277 | 62,579 | — | 4,644,290 |
| Daryl G. Byrd | 9,750,000 | 15,285,678 | — | — | 25,035,678 |
| Anthony J. Restel | 3,801,101 | 6,339,596 | 62,688 | — | 10,203,385 |
| David T. Popwell | 4,355,009 | 6,668,917 | 51,076 | — | 11,075,002 |
| Michael J. Brown[5] | — | 2,939,406 | — | — | 2,939,406 |
| William C. Losch III[6] | — | — | — | — | — |

47. The Preliminary Proxy Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

48.     Thus, while the Proposed Transaction is not in the best interests of First Horizon, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

### *The Materially Misleading and/or Incomplete Preliminary Proxy Statement*

49.     On April 12, 2022, the First Horizon Board caused to be filed with the SEC a materially misleading and incomplete Preliminary Proxy Statement that, in violation the Exchange Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

### *Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

50.     Specifically, the Preliminary Proxy Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Preliminary Proxy Statement fails to disclose:

      a.  Whether a committee of the Board that was composed solely of independent and disinterested directors was created to run the sales process;

          i.  If such a committee was created then further information regarding the composition and powers of the committee;

          ii.  If no such committee was created than adequate reasoning as to why no such committee was created;

      b.  Adequate reasoning as to why no market check for potentially interested third parties was carried out by the Board or by anyone on its behalf during the sales process;

c.   Whether the confidentiality agreements entered into by the Company with TD differed from any other unnamed confidentiality agreement entered into between the Company and potentially interested third parties (if any), and if so, in all specific manners;

d.   All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including TD, would fall away; and

e.   Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of Plaintiff and Company stockholders.

*Omissions and/or Material Misrepresentations Concerning First Horizon's Financial Projections*

51.    The Preliminary Proxy Statement fails to provide material information concerning financial projections for First Horizon provided by First Horizon management to the Board and Morgan Stanley and relied upon by Morgan Stanley in its analyses. The Preliminary Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading.

52.     Notably the Preliminary Proxy Statement reveals that as part of its analyses, Morgan Stanley noted that it reviewed, "certain internal financial statements and other financial and operating data concerning First Horizon."

53.     Therefore, the Preliminary Proxy Statement should have, but fails to provide, certain information in the projections that First Horizon management provided to the Board and Morgan Stanley. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007)

54.     With regard to the *First Horizon Street Forecasts* and *First Horizon Financial Projections* prepared by First Horizon Management, the Preliminary Proxy Statement fails to disclose material line items for the following metrics:

      a.  Earnings per Share – Core Excluding One-Time Charges, including all underlying necessary metrics, adjustments, and assumption;

      b.  Net Income Available to Common Shareholders – Core Excluding One-Time Charges, including all underlying necessary metrics, adjustments, and assumption; and

      c.  Risk Weighted Assets, including all underlying necessary metrics, adjustments, and assumption.

55.     The Preliminary Proxy Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

56.     The Preliminary Proxy Statement also failed to provide the specific inputs and assumptions upon which the following assumptions were based:

      a.   The utilized estimated long-term annual growth rate of 5.0%;

      b.   The utilized 2023 return on tangible common equity estimate for First Horizon of 15.2%; and

      c.   The Utilized 2023 return on tangible common equity estimate for First Horizon of 15.6%.

57.     This information is necessary to provide Plaintiff in his capacity as a Company stockholder a complete and accurate picture of the sales process and its fairness.  Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

58.     Without accurate projection data presented in the Preliminary Proxy Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of Morgan Stanley's financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction.  As such, the Board has violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Morgan Stanley*

59.     In the Preliminary Proxy Statement, Morgan Stanley describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

60.     With respect to the *First Horizon Public Trading Comparables Analysis*, the Preliminary Proxy Statement fails to disclose the following:

    a.   The specific metrics for the comparable companies utilized;

    b.   The specific inputs and assumptions used to determine the following utilized multiple reference ranges:

        i.    Price / 2022E EPS (First Horizon Street Forecasts) of 11.0x – 13.0x;

        ii.   Price / 2022E EPS (First Horizon Financial Projections) of 11.0x – 13.0x;

        iii.  Price / 2023E EPS (First Horizon Street Forecasts) of 9.8x – 11.8x;

        iv.   Price / 2023E EPS (First Horizon Financial Projections) of 9.8x – 11.8x; and

        v.    Price / Tangible Book Value of 1.8x – 2.0x.

61.     With respect to the *First Horizon Dividend Discount Analysis*, the Preliminary Proxy Statement fails to disclose the following:

    a.   The specific inputs and assumptions used to determine the utilized 5.0% annual growth rate;

    b.   The specific inputs and assumption used to determine that First Horizon would make distributions of capital in excess of the amount necessary to achieve a 9.75% common equity Tier 1 ratio level;

    c.   The range of terminal values for First Horizon calculated;

    d.   The discounted present values of projected dividends on shares of First Horizon common stock as of December 31, 2021 through December 31, 2026 utilized;

e.  The specific inputs and assumptions used to determine the utilized range of terminal forward multiples of 11.0x to 13.0x;

f.  The specific inputs and assumptions used to determine the utilized discount rate range of 7.8% to 9.8%; and

g.  The specific inputs and assumptions used to determine the utilized 1.0% opportunity cost of cash.

62.  With respect to the *First Horizon Analyst Price Targets Analysis*, the Preliminary Proxy Statement fails to disclose the following:

a.  The specific inputs and assumptions used to determine the utilized discount rate of 8.8%.

63.  These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

64.  Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder.  Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public First Horizon stockholder.  As such, the Board has violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement.

## FIRST COUNT

### Violations of Section 14(a) of the Exchange Act

### (Against All Defendants)

65.  Plaintiff repeats all previous allegations as if set forth in full herein.

66.  Defendants have disseminated the Preliminary Proxy Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

67. Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction. Specifically, Section 14(a) provides that:

It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

68. As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

69. The Preliminary Proxy Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Preliminary Proxy Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

70. The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

71.     The Individual Defendants were at least negligent in filing a Preliminary Proxy Statement that was materially misleading and/or omitted material facts necessary to make the Preliminary Proxy Statement not misleading.

72.     The misrepresentations and omissions in the Preliminary Proxy Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

**SECOND COUNT**

**Violations of Section 20(a) of the Exchange Act**

<u>**(Against all Individual Defendants)**</u>

73.     Plaintiff repeats all previous allegations as if set forth in full herein.

74.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or should have known that the Preliminary Proxy Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

75.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein. The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Preliminary Proxy Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Preliminary Proxy Statement. The Individual Defendants were provided with copies of, reviewed and approved,

and/or signed the Preliminary Proxy Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

76.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of First Horizon's business, the information contained in its filings with the SEC, and its public statements.  Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Preliminary Proxy Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Preliminary Proxy Statement and are therefore responsible and liable for the misrepresentations contained herein.

77.     The Individual Defendants acted as controlling persons of First Horizon within the meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the Individual Defendants had the power and authority to cause First Horizon to engage in the wrongful conduct complained of herein.  The Individual Defendants controlled First Horizon and all of its employees.  As alleged above, First Horizon is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9.  By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A.     Enjoining the Proposed Transaction;

B.     In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.     Directing the Individual Defendants to comply with the Exchange Act to disseminate a Preliminary Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: April 19, 2022                    **BRODSKY & SMITH**

                                          By: _____
                                          Evan J. Smith
                                          240 Mineola Boulevard
                                          Mineola, NY 11501
                                          Phone: (516) 741-4977
                                          Facsimile (561) 741-0626

                                          *Counsel for Plaintiff*